IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OROS, INC., | ) | |
|     Plaintiff and Counterclaim Defendant, | )<br>)<br>)<br>) | |
| v. | )<br>) | |
| JAMAL DAJANI, | ) | 1:19-cv-351 (LMB/IDD) |
|     Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | |
| OROS AMERICAS, INC., et al., | )<br>) | |
|     Third-Party Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is defendant Jamal Dajani's ("Dajani" or "defendant") motion to dismiss Counts I, II, and III of OROS, Inc.'s ("Oros Inc." or "plaintiff") complaint, to which plaintiff has responded, and defendant has filed a reply brief.[1] The parties have waived a hearing, and the Court finds that oral argument would not aid the decisional process. For the reasons that follow, defendant's motion to dismiss will be granted as to Count I and denied as to Counts II and III.

---

[1] Dajani has also filed counterclaims against Oros Inc. as well as a third-party complaint against OROS Americas, Inc. ("Oros Americas"); OROS SASU ("Oros SASU"); and Vincent Hélary ("Hélary"), Oros SASU's general manager. Dajani alleges that he was wrongfully terminated and that Oros SASU and Hélary have attempted to effect an unlawful takeover of Oros Inc. and a transfer of its ongoing interests to the newly created Oros Americas. Dajani made many of the same arguments as part of his opposition to Oros Inc.'s motion for preliminary injunctive relief, which the Court denied in April 2019. Because Dajani's Rule 12(b)(6) motion tests the factual and legal sufficiency of Oros Inc.'s complaint, Dajani's own allegations and the evidence introduced during the preliminary injunction stage are not properly before the Court at this time.

Oros Inc. initiated this civil action on March 27, 2019. Its complaint sets forth five counts. Count I is a standalone request for injunctive relief. Counts II and III allege that Dajani's actions constitute misappropriation of trade secret information in violation of the federal Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA"), respectively. Finally, Counts IV and V are state-law claims sounding in breach of fiduciary duty and conversion, respectively. Only Counts I, II, and III are at issue in Dajani's motion to dismiss.[2]

I.[3]

Oros Inc. is incorporated in Delaware and has its principal place of business in Virginia. Its mission is to serve as the United States seller and distributor of instruments to measure noise and vibration that are designed and manufactured by Oros SASU, a French company. Oros SASU owns an 80% interest in Oros Inc. The remaining 20% interest is owned by Dajani, who since 1998 was also Oros Inc.'s president and a member of its board of directors.

Plaintiff alleges that Dajani was an unsatisfactory president in several ways. Oros Inc.'s financial performance was "largely inadequate throughout his tenure . . . , declining particularly in recent years." Verified Compl. [Dkt. No. 1] ("Compl.") ¶ 11. Dajani also, among other acts,

---

[2] This Court has original subject-matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Oros Inc.'s DTSA cause of action arises under federal law and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state-law claims. Of course, were Count II of the complaint to be dismissed, it appears this Court would be deprived of its subject-matter jurisdiction: Dajani is a Virginia resident and Oros Inc. has its principal place of business in Virginia, meaning that there is not complete diversity between the parties under 28 U.S.C. § 1332. See Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 102 (4th Cir. 2011) ("For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business.").

[3] The following facts are drawn from Oros Inc.'s complaint and, for purposes of Dajani's Rule 12(b)(6) motion, are assumed to be true.

issued himself a $130,000 loan without the board's permission; refused to provide access to the company's bank accounts to other board members; failed to cooperate during a financial audit; and refused to discuss issues such as his salary or activities of the company's sales representatives with the board. That conduct, along with what plaintiff alleges was a "generally obstructive and defiant" attitude toward Oros SASU, id. ¶ 12, led to Dajani's termination by the board on January 18, 2019.

Dajani has not ceded his role as president. Instead, he has retained control over Oros Inc.'s computer server, equipment, financial records, and bank accounts, as well as the access codes to cloud-based services. He continues to access the company's email accounts and has been holding himself out to employees and customers as the company's rightful president. And he has refused to give up or return information that plaintiff alleges is confidential and proprietary, including "the pricing structure of [Oros Inc.'s] products, lists of customers and prospects, and knowledge of the product obsolescence in the hands of its customers." Compl. ¶ 25. Plaintiff alleges that Dajani has refused to return this information in order to "maximize the price of a buy-back" of the 20% interest he owns in Oros Inc. Id. ¶ 1.

## II.

Dajani argues that Counts II and III of Oros Inc.'s complaint should be dismissed because the complaint fails to allege sufficient facts plausibly indicating that Dajani is liable for trade secret misappropriation. He also argues that Count I, Oros Inc.'s request for injunctive relief, is not properly pleaded as a separate count and should also be dismissed. Oros Inc. responds as to Counts II and III that it has more than satisfied the pleading standards set out in Rules 8 and 12 of the Federal Rules of Civil Procedure. And although Oros Inc. does not contest that a request for injunctive relief is not an independent cause of action, it argues that such a request is clearly

3

articulated in the current iteration of the complaint. Nonetheless, Oros Inc. seeks leave to amend its complaint in the event the Court concludes that the remaining counts do not adequately request injunctive relief.

A complaint should be dismissed under Rule 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 570). The Court must "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent those allegations pertain to facts rather than legal conclusions. Iqbal, 556 U.S. at 678-79.

III.

Traditionally, trade secret protections were entirely a matter of state law. In 2016, Congress passed the DTSA to provide federal jurisdiction for trade secret misappropriation claims where the trade secrets at issue are "related to a product or service used in, or intended for use in, interstate or foreign commerce." Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2, 130 Stat. 376, 376 (codified at 18 U.S.C. § 1836). The DTSA provides additional federal protections for trade secret holders but does not "preempt or displace any other remedies, whether civil or criminal, provided by . . . State . . . law." 18 U.S.C. § 1838. And in critical

4

respects, the applicable standards under the DTSA and under state-law analogues—for instance, the VUTSA—are nearly identical. To make out a trade secret misappropriation claim under the DTSA and the VUTSA, Oros Inc.'s complaint must allege both (a) that the information at issue qualifies as one or more trade secrets and (b) that Dajani misappropriated the trade secrets with the requisite mens rea, either by wrongfully acquiring the information or by using or disclosing it with actual or imputed knowledge that it was a trade secret. Dajani argues that Oros Inc.'s complaint fails on both fronts.

A.

Defendant first argues that the complaint fails to identify any trade secrets. Under the DTSA, "trade" secret is defined as

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

18 U.S.C. § 1839(3). The definition under the VUTSA is similar. See Va. Code Ann. § 59.1-336 ("'Trade secret' means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and 2. Is the subject of efforts that are reasonable under the circumstances to

5

maintain its secrecy."). Given these broad definitions, nearly any type of information can be subject to trade secret protections under federal and state law, see MicroStrategy Inc. v. Bus. Objects, S.A., 331 F. Supp. 2d 396, 416 (E.D. Va. 2004) ("The case law is clear that just about anything can constitute a trade secret under the right set of facts."), so long as the information (i) has independent economic value by virtue of its being a secret and (ii) is subject to reasonable efforts to maintain that secrecy.

Dajani argues that Oros Inc.'s complaint fails to identify any trade secrets with the requisite factual specificity. This argument shortchanges the entirety of the factual allegations in the complaint, which alleges that despite his termination by the board of directors, Dajani has retained control over much of all of the information housed in Oros Inc.'s physical offices and computer servers. For example, the complaint alleges that Dajani has wrongfully maintained control over "customer identities/contact information [and] pricing information." Compl. ¶ 18; see also id. ¶ 25 (alleging misappropriation of "the pricing structure of its products [and] lists of customers and prospects"); id. ¶ 32 (alleging misappropriation of "compilations of customer pricing and customer identification, sales history, and equipment ownership information"). Contrary to defendant's argument, that type of information is subject to trade secret protection, at least where the other elements of the statutory definitions are satisfied.[4] See, e.g., MicroStrategy, 331 F. Supp. at 424-25 (ruling that a list of current and prospective clients qualified as a trade secret because it was "considered confidential," "was not the sort of thing that properly would be

---

[4] Dajani is correct that many of the categories of information identified in the complaint do not fit within the trade secret framework. For instance, although passwords and access codes are confidential or proprietary, they are not trade secrets because their disclosure would not enable the recipient to generate independent economic value. Nonetheless, that the complaint's allegations of trade secrets are overbroad does not mean that there is no adequately pleaded trade secret claim that can withstand Dajani's motion to dismiss.

in the possession of a competitor," and "would be of value to a competitor that could determine where to apply its resources and who [sic] to target"); Spirax Sarco, Inc. v. SSI Eng'g, Inc., 122 F. Supp. 3d 408, 426 (E.D.N.C. 2015) (ruling that a customer list, "old and new product prices," and other information related to products offered to or requested by previous consumers properly constituted trade secrets, at least at the pleading stage); see also 1 Melvin F. Jager, Trade Secrets Law § 3:3 (Westlaw updated April 2019) ("Trade secrets . . . could relate to nontechnical aspects of business, such as price codes, customer lists, economic studies, cost reports, and bookkeeping methods."). Moreover, it bears emphasizing that Oros Inc.'s complaint deals not with an isolated set of documents or information but rather with the entire contents of a company's office. Under those circumstances, Oros Inc.'s complaint is fairly read to include all of the valuable customer and pricing information collected by a distributor company over its decades of work. Drawing all reasonable inferences in plaintiff's favor, that information is subject to trade secret protection under both the DTSA and the VUTSA.

Dajani next contends that Oros Inc. relies on inappropriately "bald, conclusory pleading" with respect to the other elements of its trade secret claims. Def.'s Mem. 5. Specifically, Dajani points out that the complaint alleges only that the trade secrets in dispute "are subject to reasonable efforts to maintain their secrecy, have independent economic value, are confidential, are not publically [sic] known or available, and are extremely proprietary." See Compl. ¶ 26. To be sure, plaintiff's complaint is not a paragon of factual specificity and certainly could have included more details about the nature of the material under Dajani's control. But the Federal Rules require only "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), enough to support a "reasonable inference that the defendant is liable," Iqbal, 556 U.S. at 678. The information alleged in plaintiff's complaint—lists of past, present, and prospective clients,

7

together with the pricing and equipment information associated with that clientele—is necessarily of the sort that is not freely shared with the public or with competitors. And there is no doubt why that is so: Were competitors to learn exactly which companies Oros Inc. has targeted with which equipment and at what price, those competitors could systematically underbid or outmaneuver Oros Inc. and thus gain an economic advantage. In short, plaintiff's complaint alleges sufficient facts to place Dajani on notice as to what information is subject to its trade secret claims.[5]

B.

The second issue is whether Oros Inc.'s complaint adequately pleads misappropriation of those trade secrets by Dajani. Under the DTSA, "misappropriation" is defined as

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>
>>> (i) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

---

[5] Dajani argues that he "should not have to guess what information within an entire office of furniture, files, and computer records is the information that Plaintiff is claiming to be a trade secret." Def.'s Reply 2. That Dajani has (as alleged by plaintiff) wrongfully withheld such a large volume of information is no defense to the claim that some subset of that information is subject to trade secret protection. And Dajani will have at his disposal detailed interrogatories and other tools of the discovery process to further ascertain the exact nature of plaintiff's claims.

8

(iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake . . . .

18 U.S.C. § 1839(5). "Improper means," in turn, is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" but does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." Id. § 1839(6). The relevant definitions under the VUTSA are, once again, similar.[6]

Quoting selectively from the criminal provisions of the DTSA, Dajani argues that plaintiff has not stated a claim for misappropriation because the complaint does not allege that Dajani used "fraud, artifice, or deception" to obtain the alleged trade secrets. Def.'s Mem. 4-5 (quoting 18 U.S.C. § 1832(a)(1)). But as plaintiff correctly responds, that provision is beside the point. To survive a motion to dismiss, Oros Inc. need only plausibly plead that Dajani acquired the trade secrets at issue by "improper means," 18 U.S.C. § 1839(5); Va. Code Ann. § 59.1-336,

---

[6] Under the VUTSA, misappropriation is defined as (i) "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (ii) "[d]isclosure or use of a trade secret of another without express or implied consent by a person who" used improper means to acquire the secret or knew or had reason to know, at the time of the disclosure or use, that the secret was derived from someone who used improper means to acquire the secret, acquired under circumstances giving rise to a duty of confidentiality, or acquired through accident or mistake. Va. Code Ann. § 59.1-336. The VUTSA does not itself define "improper means," but that term generally refers to the acquisition of trade secrets "without express or implied consent." Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd., 859 F. Supp. 2d 771, 780 (E.D. Va. 2012).

9

a broad term that includes not only deceptive acts such as "theft, fraud, [or] unauthorized interception of communications" but also "breach[es] of confidence . . . and other means either wrongful in themselves or wrongful under the circumstances of the case," Restatement (Third) of Unfair Competition § 43 (Am. Law Inst. 1995); see also id. cmt. c ("It is not possible to formulate a comprehensive list of the conduct that constitutes 'improper' means of acquiring a trade secret. . . . The propriety of the acquisition must be evaluated in light of all the circumstances of the case . . . ."). And Oros Inc. has satisfied that pleading burden. The complaint alleges that Dajani relocated the offices of Oros Inc. and, despite his termination and the requests of the company's board of directors, has refused to return those offices' contents or cede control over the company's files and accounts. Even assuming Dajani at one time would have rightfully had control over that information as the company's president,[7] his refusal to return that information after he was terminated is enough to qualify as acquisition through improper means, at least at this stage of the litigation. Put another way, Oros Inc. need not allege that Dajani outright stole the relevant information; to the extent he had been entrusted with the information as president, that trust was limited in nature and would have terminated once the agency or fiduciary relationship between him and Oros Inc. had ended. For these reasons, because plaintiff has adequately pleaded misappropriation of trade secret information, Counts II and III of the complaint will not be dismissed.[8]

---

[7] For instance, Dajani accuses plaintiff of artful pleading in not specifying "whether he removed the trade secrets from Oros, Inc.'s offices before or after" the date of his termination. Def.'s Mem. 7.

[8] Oros Inc. also argues that the complaint adequately pleads misappropriation by use, pointing to the allegations that Dajani has continued to hold himself out to customers as the company's rightful president. Given the conclusion that the complaint sufficiently pleads wrongful acquisition of the trade secret information, the Court need not address this alternative argument.

IV.

One aspect of Dajani's motion to dismiss is well made. Count I of Oros Inc.'s complaint is pleaded as a standalone request for preliminary and permanent injunctive relief based on Dajani's alleged violations of "the DTSA, the VUTSA and the common law." Compl. ¶ 21. An injunction is a form of remedy, not an independently cognizable cause of action. Oros Inc. acknowledges as much. See Pl.'s Opp'n 14. Accordingly, Dajani's motion to dismiss will be granted as to Count I.[9]

V.

For the reasons stated above, Dajani's motion to dismiss will be granted as to Count I and denied as to Counts II and III by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 4th day of June, 2019.

/s/ *signature*
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[9] Oros Inc. requests leave to amend its complaint "[t]o the extent that the [C]ourt finds that injunctive relief has not been adequately pled as a remedy for any of the causes of action." Pl.'s Opp'n 14. Although Count II makes a passing reference to injunctive relief, the remaining counts refer to damages but do not mention injunctive relief at all. To avoid any issues going forward, Oros Inc. will be permitted to file an amended complaint clarifying for which counts it is seeking which remedies within one week of the date of entry of the Order accompanying this Memorandum Opinion.